# CHESAPEAKE & DELAWARE CANAL COMPANY *v.* UNITED STATES.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 192.  Argued April 17, 1919.—Decided May 19, 1919.

It is a perversion of the rule requiring assignments of error to multiply them unnecessarily. P. 124.

State statutes of limitations and the principle of laches are inapplicable to the United States when asserting governmental rights. P. 125.

*Semble,* that the presumption of payment arising from the lapse of twenty years without suit to collect does not apply to the United States in such cases. *Id.*

The collection of dividends declared on corporate shares owned by the United States is an assertion of its right as creditor unaffected by its relations as shareholder, and, in suing for such dividends, they being public moneys applicable only to public purposes, the United States acts in its governmental capacity. P. 126.

Books of the Treasury Department, showing the miscellaneous receipts and disbursements of the Government, printed from the written public records of the Department, pursuant to the acts of Congress and Art. I, § 9, cl. 7, of the Constitution, and used as original records in the daily business of the Department and produced from its custody, *held,* competent evidence, without certification under Rev. Stats., § 882, for the purpose of proving the nonpayment as well as the payment of dividends by a private corporation to the United States. P. 127.

Evidence *held* sufficient to show that dividends sued for by the Government many years after they were declared were never paid, and to sustain refusal of defendant's motion for a directed verdict. P. 129.

240 Fed. Rep. 903, affirmed.

THE case is stated in the opinion.

*Mr. Charles J. Biddle,* with whom *Mr. Charles Biddle, Mr. Andrew C. Gray, Mr. J. Rodman Paul* and *Mr. R. Mason Lisle* were on the brief, for plaintiff in error.

*The Solicitor General, Mr. Assistant to the Attorney General Todd* and *Mr. Lincoln R. Clark,* for the United States, submitted.

MR. JUSTICE CLARKE delivered the opinion of the court.

In 1912 the United States sued the Canal Company to recover the amount of three dividends which had been declared on shares of its capital stock owned by the Government, in the years 1873, 1875, and 1876, payment of which, it was averred, had been refused when demand was made therefor in the year 1911.

After various vicissitudes the case went to trial on issue joined on the plea of payment by the Company and it comes into this court on writ of error to the Circuit Court of Appeals for the Third Circuit.

There are forty-one assignments of error in this court, which counsel in their brief compress into five questions, and these resolve themselves, at once, into three, viz.: (1) The applicability of the statute of limitations of the State of Delaware; (2) The admissibility in evidence of certain books of the Department of the Treasury; and (3) The propriety of a requested instruction in favor of the Canal Company.

Such a record constrains us to repeat the following:

"This practice of unlimited assignments is a perversion of the rule, defeating all its purposes, bewildering the counsel of the other side, and leaving the court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on." *Phillips & Colby Construction Co.* v. *Seymour,* 91 U. S. 646, 648; *Grayson* v. *Lynch,* 163 U. S. 468, and *Central Vermont Ry. Co.* v. *White,* 238 U. S. 507.

The plea of the statute of limitations was rejected by both lower courts, and, although the specific assignment of this ruling as error in the Circuit Court of Appeals is

not repeated in this court, it will be considered because possibly embraced within some of the general assignments.

Both lower courts ruled that the Government was not bound by the state statute of limitations and that the doctrine of laches was not applicable to it, but they agreed that a rebuttable presumption of payment arose after the lapse of more than twenty years from the date when the debt became due, without suit being instituted to collect it, and that, this appearing from the pleadings of the Government, the burden was upon it of overcoming the presumption by evidence that payment, as it averred, had not been made. The Company, without introducing any testimony, relied wholly upon this presumption of payment.

Although the burden of the responsibility of proving non-payment was accepted by the Government, the Canal Company, nevertheless, argues that the state statute of limitations is also applicable.

It is settled beyond controversy that the United States when asserting "sovereign" or governmental rights is not subject to either state statutes of limitations or to laches.

That the doctrine of laches is not applicable to the Government was announced by Mr. Justice Story on the Circuit in 1821 and afterward in 1824 authoritatively, upon principle, in *United States* v. *Kirkpatrick*, 9 Wheat. 720.

This rule has been often approved and was applied so lately as *Utah Power & Light Co.* v. *United States*, 243 U. S. 389, 409.

That the United States is not bound by state statutes of limitations is settled with equal definiteness in *United States* v. *Nashville, Chattanooga & St. Louis Ry. Co.*, 118 U. S. 120; *United States* v. *Whited & Wheless*, 246 U. S. 552, 561.

Whether this rule extends to and includes the presumption of payment arising from the lapse of twenty years

without suit to collect is not questioned by appropriate exceptions in the record before us, and it is, therefore, not decided. It is not intended, however, to approve the holding of the Circuit Court of Appeals on this subject. *United States* v. *Thompson*, 98 U. S. 486, 489, and cases hereinbefore cited.

The contention of the Canal Company that the Government by becoming a stockholder in a private corporation so abdicated its governmental character that, under the circumstances, f this case, it was bound as a private person by statutes and rules of limitation, cannot be allowed.

If the Government were asserting any rights with respect to the conduct of the corporation's affairs, its contracts or its torts, then its rights, duties and privileges would be no greater than those of any other stockholder. *Bank of the United States* v. *Planters' Bank*, 9 Wheat. 904, 907. But here the Government is pursuing a right to recover, which is not affected by its relation to the corporation as a stockholder. The declaration of the dividends, which is admitted, gave it the status of a creditor of the company, and, thereafter, the right to recover was unaffected by any stockholder relation. To this must be added that the statutes and rules of limitation relate to the remedy to enforce the right, and not to the corporate relation from which the right springs, and that, since these dividends constituted "public money" applicable to public purposes only, the Government in collecting them was acting in its governmental capacity as much as if it were collecting taxes, such as those with which, no doubt, the stock which produced the dividends was purchased. The Circuit Court of Appeals answered this contention in a manner not to be improved upon, saying (223 Fed. Rep. 926, 928):

"We may perhaps add a few words to say that the fallacy of the company's argument seems to lurk in the assumption that in this action the government is asserting a right

in its character as a stockholder. Undoubtedly the right came into being because the government owns the stock, but in no other respect has the suit anything to do with such ownership. The government is not suing as a stockholder; it is suing as a creditor, and in this character alone is it now to be considered."

The questions remain as to the admissibility of the books and the sufficiency of the evidence to carry the case to the jury.

The Government produced a witness who testified that he, in conspiracy with another employee of the Canal Company, embezzled the amount of these dividends and that to conceal their crime they placed in the files of the Canal Company, from which they were produced in evidence, forged drafts purporting to have been drawn by Assistant Treasurers of the United States upon the Treasurer of the Canal Company for payment of these dividends and also what purported to be receipts therefor. This witness testified that until 1886, when he left the employ of the Canal Company, no notice of the declaration of the three dividends in controversy had been sent to the Government, as had been the practice when earlier dividends were declared; that until that time no payment of them had been made, and that the names signed to the drafts and receipts were fictitious.

The Government also produced the notices by the Canal Company of the declaration of each of the fourteen earlier dividends and the record of the payment of them.

To supplement this evidence the books were produced in evidence, the admission of which is assigned as error.

Employees of the Department of the Treasury, who produced the books, testified: that they were records of the Department compiled by authority of law under the direction of the Secretary of the Treasury and were the volumes in daily use by officials and employees in the discharge of their duties; that part of them were printed

from the original records of miscellaneous revenues, in which such dividends would be classed, while others were printed compilations from books not of original entry, and the testimony was that the volumes produced were intended to, and the witnesses believed did, show all of the miscellaneous receipts and disbursements of the Government from 1848 to 1914. They showed the receipt by the Government of fourteen dividends paid by the Canal Company prior to those in controversy and the witnesses testified that a careful search made by them failed to discover any record in the books of the receipt of any of the three dividends sued for. There was an elaborate description of the method employed by the Department of the Treasury in keeping its accounts and of the necessarily contemporaneous character of the original entries, which it is not necessary to rehearse. The copies produced were printed by the Public Printer.

The objection is that these are not books of original entry and that they are not certified as copies of public records are required to be by Rev. Stats., § 882.

It is enough to say of this last contention that although the books admitted were printed from written public records, they were so printed by authority of law and were produced from the custody of the Department of the Treasury, where they were used as original records in the transaction of the daily business of the Department and therefore they did not require certification.

They were public records, kept pursuant to constitutional and statutory requirement. Constitution of the United States, Article I, § 9, cl. 7; Act of Congress, approved September 2, 1789, c. 12, § 2, 1 Stat. 65; Rev. Stats., § 257; Act of Congress, approved September 30, 1890, c. 1126, 26 Stat. 504, 511; Act approved July 31, 1894, c. 174, § 15, 28 Stat. 162, 210. Thus, their character as public records required by law to be kept, the official character of their contents entered under the sanction of public duty,

the obvious necessity for regular contemporaneous entries in them and the reduction to a minimum of motive on the part of public officials and employees to either make false entries or to omit proper ones, all unite to make these books admissible as unusually trustworthy sources of evidence. *Gaines* v. *Relf*, 12 How. 472, 570; *Bryan* v. *Forsyth*, 19 How. 334, 338; *Post* v. *Supervisors*, 105 U. S. 667, 670; *Oakes* v. *United States*, 174 U. S. 778, 783, 796; *Holt* v. *United States*, 218 U. S. 245, 253. Obviously such books are not subject to the rules of restricted admissibility applicable to private account books. The considerations which we have found rendered the books admissible in evidence as tending to prove the truth of the statements of entries contained in them also make them admissible as evidence tending to show that because the receipt of the dividends was not entered in them they were not received and therefore were not paid. The evidence may not be as persuasive in the latter case as in the former, but that it was proper evidence to be submitted to the jury for the determination of its value we cannot doubt. Such books so kept presumptively contained a record of all payments made and the absence of any entry of payment, where it naturally would have been found if it had been made, was evidence of nonpayment proper for the consideration of the jury. *United States* v. *Teschmaker*, 22 How. 392, 405; *State* v. *McCormick*, 57 Kansas, 440; *Bastrop State Bank* v. *Levy*, 106 Louisiana, 586; Wigmore on Evidence, § 1531, § 1633, par. 6.

We agree with the Circuit Court of Appeals that the evidence introduced carries clear conviction that the dividends were never paid, and that the request of the Canal Company for an instructed verdict in its favor was properly denied. The judgment of the Circuit Court of Appeals is

*Affirmed.*