**UNITED STATES of America**

v.

**William M. DAVIS et al.**

**Civ. A. No. 90–0484 P.**

United States District Court,
D. Rhode Island.

June 22, 1992.

Bernard P. Bell, Michele M. Giuliani, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, D.C. (Richard Stewart, Daniel Beckhard, Everett Sam-martino, Julie Taylor, Patricia Sims, Alex Beehler, Brian Burke, of counsel), for plaintiffs.

Mark O. Denehy, Adler, Pollock & Sheehan, Inc., Providence, R.I., Liaison counsel, for third party defendants.

Steven W. Raffa, Blish & Cavanagh, Providence, R.I., Local counsel, Samuel D. Rosen, Milgrim Thomajan & Lee P.C., New York City, for defendant Clairol.

Robert S. Sanoff, Foley, Hoag & Eliot, Boston, Mass., Liaison counsel, for Generator defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the United States moved to strike certain defendants' affirmative defenses from the pleadings as legally insufficient. The United States contended that section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, did not permit most of the asserted defenses. On April 17, 1992, Magistrate Judge ("Magistrate") Boudewyns issued a Memorandum and Order Striking Affirmative Defenses. The Court has received objections to this Order from both the United States and defendant Clairol, Inc.

### STANDARD OF REVIEW

When a Magistrate rules upon a "pretrial matter dispositive of a claim or defense of a party," the District Court shall make a *de novo* determination of the objected to portions of the disposition. Fed.R.Civ.P. 72(b); Local Rule 32(c)(2). An order striking affirmative defenses is dispositive of those defenses. A motion seeking such an order, even if denied in part, is also a dispositive pre-trial matter. *See Melia v. Les Grands Chais de France*, 135 F.R.D. 28, 38 (D.R.I.1991).

### DISCUSSION

The parties have appealed four basic areas of contention. The de minimis, equitable, and prosecutorial defenses are or remain stricken; the ambient defense is reinstated within certain parameters.

## A. DEFENSE OF PROSECUTORIAL MISCONDUCT

The Magistrate correctly struck Clairol's defense of prosecutorial misconduct under CERCLA, Section 107(b).

## B. AMBIENT DEFENSE

█ Clairol's ambient defense is sufficient in law, although Clairol perhaps caused the Magistrate's misinterpretation by characterizing this defense too broadly. In *United States v. Ottati & Goss, Inc.*, 900 F.2d 429, 437 (1st Cir.1990), the First Circuit held that if high concentrations of *otherwise naturally occurring metals* were found in surrounding uncontaminated areas, "nature, not man, is likely responsible for high metal concentrations throughout the site." *Id.* at 438.

Clairol paraphrases this standard stating: "*Ottati* stands for the proposition that a party is not liable for response costs when the concentrations of hazardous substances found at the allegedly contaminated areas of the site are equal to or less than those concentrations naturally occurring in the area of the site." Clairol's Objections to the Magistrate's April 17, 1992 Order Striking Affirmative Defenses at 4. Articulating the defense in this manner needlessly confuses the issue. Indeed, the ambient defense is not a true affirmative defense. The equitable defenses discussed later are good examples of affirmative defenses. Here, if Clairol can show that the concentration of naturally occurring metals and other compounds in uncontaminated areas around the site is equal to or less than those found in the site, one could correctly assume that the substances *were not put there* by Clairol. A party is not liable for the costs of removing naturally occurring substances. However, if the government can prove that Clairol dumped a certain substance at the site, the retort, "but it is still lower than the ambient levels," is impermissible. Section 107(a) of CERCLA does not impose a specific causation requirement in order to establish liability. Clairol's ambient defense, construed in this manner, is reinstated.

## C. DE MINIMIS DEFENSE

█ The Magistrate refused to strike the "de minimis" defense to liability raised by several defendants. The Magistrate cited the First Circuit opinion in *O'Neil v. Picillo*, 883 F.2d 176 (1st Cir.1989) for this holding. This was in error.

Neither this Court nor the First Circuit has allowed a de minimis defense to liability. The footnote cited by the Magistrate refers to the possibility that an *already liable* party seeking to avoid joint and several liability could meet its burden of demonstrating divisibility by "documenting that they had generated only a small amount of waste and then had ceased operations." *O'Neil v. Picillo*, 883 F.2d 176, 182 n. 8 (1st Cir.1989).

The issue of divisibility is distinct from the issue of liability. Indeed, the First Circuit identified this distinction in a prior footnote in *Picillo*. "It is at [the stages of de minimis settlements and contribution actions], then, that the question of 'substantiality' should be considered, and *not* at the point of determining liability to the government." *Picillo*, 883 F.2d at 180 n. 4 (emphasis added).

Other courts have also rejected de minimis defenses in CERCLA cost recovery actions. *See United States v. Kramer*, 757 F.Supp. 397, 423 (D.N.J.1991); *Colorado v. Idarado Mining Co.*, 707 F.Supp. 1227, 1243 (D.Colo.1989); *United States v. Tyson*, 25 Env't Rep.Cas. (BNA) 1897, 1906, 1986 WL 9250 (E.D.Pa.1986); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 233, 259 (W.D.Mo.1985); *United States v. South Carolina Recycling Disposal, Inc.*, 653 F.Supp. 984, 992 (D.S.C. 1984), *aff'd in relevant part sub nom.*, *United States v. Monsanto Co.*, 858 F.2d 160, 169 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *United States v. Carolawn Co., Inc.*, 21 Env't Rep. Cas. (BNA) 2124, 2126 (D.S.C.1984); and *United States v. Wade*, 577 F.Supp. 1326, 1339–41 (E.D.Pa.1983). The de minimis defense is stricken.

## D. EQUITABLE DEFENSES

The area of equitable defenses presents a unique situation. The Magistrate outlined the problem as follows:

The United States' position is that CERCLA actions under section 107(a) allow only the three defenses which are enumerated in section 107(b). The defendants would not be liable if the release or threat of release was caused by (1) an act of God, (2) an act of war, (3) an act or omission of an unrelated, uncontracted third party, and the defendant can establish that he exercised due care and took precautions against foreseeable acts or omissions of any such third party, or (4) any combination of the three.

Defendant's claim that CERCLA does not give the United States the authority to "run roughshod over the basic legal standards of proof and due process under the guise of limiting affirmative defenses." As a result, the defendants claim their defenses should not be stricken from the pleadings.

In the disposition of this matter, the reasoning and results of two cases are diametrically opposed: *Violet v. Picillo* [648 F.Supp. 1283 (D.R.I.1986)] and *United States v. Kramer* [757 F.Supp. 397 (D.N.J.1991)]. Both cases involve the court's consideration of the use of affirmative defenses in cases arising under CERCLA. The United States asks the court to overrule its holding in *Picillo* and adopt the standards enunciated in *Kramer*. The defendants urge this Court to adhere to *Picillo*.

Magistrate' Memorandum and Order, April 17, 1992 at 1–2 (citations omitted).

The Magistrate continued:

*Picillo*, the controlling precedent in this district, differs from other, more recent CERCLA rulings in that it allows defendants to assert equitable defenses. "Because the plaintiff seeks equitable relief, the defendants should not be barred from asserting equitable defenses." ... The majority of courts since *Picillo* have not permitted equitable defenses.... [T]his court is unwilling to second guess the decisions of the district and circuit courts. *Picillo* is controlling.

Magistrate's Memorandum and Order, April 17, 1992 at 3–5 (citations omitted).

Of course, Magistrate Boudewyns' recommendation was constrained by *Violet v. Picillo*, 648 F.Supp. 1283 (D.R.I.1986), a prior decision of this very Court. However, the particular issue of equitable defenses was *not* appealed and *not* addressed by the First Circuit in *Picillo*. Therefore, its precedential value on the equitable defense issue is limited; in fact, this Court now overrules it.

### 1. *Analysis*

■ My analysis of the propriety of equitable defenses under CERCLA begins with *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). In *Weinberger*, the Supreme Court addressed whether the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1251, *et seq.*, withdrew the district court's equitable discretion in considering injunctive relief. The Supreme Court concluded that this statute did indeed allow the use of equitable defenses, but it also concluded that Congress could, if it wished, deny district courts' equitable discretion.

The Court requires clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of the jurisdiction is to be recognized and applied.

*Romero–Barcelo*, 456 U.S. at 313, 102 S.Ct. at 1804.

In *United States v. Kramer*, 757 F.Supp. 397 (D.N.J.1991), the court decided that in section 107(a), Congress had in fact restricted the court's jurisdiction in equity. "The language of section 107(a) is unambiguous: liability is imposed 'notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of the section.'" *Kramer*, 757 F.Supp. at 426.

The court in *Kramer* specifically rejected the reasoning of *Picillo*.

While it may be logical to permit equitable defenses in an inherently equitable proceeding, and sections 106 and 113 both permit equitable considerations, the clear answer for section 107 is that Congress explicitly limited the defenses available to only those three provided in section 107(b).... In short, we will strike all the many equitable defenses raised by various defendants.

*Kramer,* 757 F.Supp. at 428–29. Of course, this Court is not bound by a New Jersey district court opinion; however, I find the reasoning of *Kramer* logical and persuasive. In 1986, this Court had very little precedent on this issue to consider. Over the past five years, the majority of courts to rule on equitable defenses have rejected them. *See Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 90 (3d Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989); *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1451–52 (W.D.Mich.1989); *United States v. Vineland Chemical Co.,* 692 F.Supp. 415, 423 (D.N.J.1988); *Chemical Waste Management, Inc. v. Armstrong World Indus.,* 669 F.Supp. 1285, 1291 n. 7 (E.D.Pa.1987); *United States v. Stringfellow,* 661 F.Supp. 1053, 1062 (C.D.Cal.1987).

In *Picillo,* this Court cited two cases as support for allowing equitable defenses. The Court is now convinced that neither case fairly supports the prior position. *Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049 (D.Ariz.1984), *aff'd,* 804 F.2d 1454 (9th Cir.1986) was a private cost recovery action. Equitable defenses may be asserted against private plaintiffs. *See Vineland,* 692 F.Supp. at 423–24; *Celotex,* 851 F.2d at 88–89; *Richmond, Fredericksburg & Potomac R.R. Co. v. Clarke,* No. 90–00336, 1991 WL 321033 (E.D.Va. Jan. 22, 1991). *Mardan* itself affirmed that equitable defenses were not proper in section 107 actions brought by the government.

> Defendants remain liable to the state or federal government in an action based on Section 107(a)(4)(A) of the Act. Neither defendants' contractual defenses nor the unclean hands doctrine would present a bar to recovery if such an action were brought. Hence the public policy of assuring that responsible parties bear the costs of hazardous waste clean-up is not defeated by the application of the clean hands doctrine in a private recovery action under Section 107(a)(4)(B).

*Mardan,* 600 F.Supp. at 1058.

*United States v. Conservation Chemical Co.,* 619 F.Supp. 162 (W.D.Mo.1985), the second case cited in *Picillo,* held that equitable defenses may be available in cost recovery actions. *Conservation Chemical* relied on *Romero–Barcelo* for the proposition that because equitable defenses are available under section 106 of CERCLA, they would also be available under Section 107. *Conservation Chemical,* 619 F.Supp. at 205. This holding ignores the expressly restrictive language of section 107(a). Having studied other courts' decisions, this Court now feels that *Conservation Chemical* erroneously interpreted the Supreme Court's decision in *Romero–Barcelo.*

The Court does not overrule itself merely for fear of being out-of-step with the crowd; I am neither unfamiliar not uncomfortable with taking unconventional approaches to legal questions. It would be foolish, however, to ignore the holdings of other federal courts without closely examining their reasoning and revisiting the *Picillo* reasoning. This additional study, often unavailable to a trial court, leads me to conclude that the equitable defense portion of *Picillo* was wrongly decided. Accordingly, the Court overrules only that portion of *Picillo* which allows equitable defenses. Section 107(a) supplies the restrictive language needed to deprive the court of its traditional equitable jurisdiction. The equitable defenses are stricken.

SO ORDERED.